JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Priority | ____ |
| Send | ____ |
| Enter | ____ |
| Closed | ____ |
| JS-5/JS-6 | ____ |
| Scan Only | ____ |

CASE NO.: <u>CV 12-09374 SJO (JCx)</u>    DATE: <u>November 7, 2013</u>

TITLE:     <u>Gabe Watkins v. Vital Pharmaceuticals, Inc., et al.</u>

========================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                           Not Present
Courtroom Clerk                        Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANTS:**

Not Present                              Not Present

========================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** [Docket No. 32]

This matter comes before the Court on Defendants Vital Pharmaceuticals, Inc. ("Vital") and General Nutritional Centers, Inc.'s ("GNC") (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion"). The Motion was filed on September 20, 2013. Plaintiff Gabe Watkins ("Plaintiff") filed an Opposition on September 30, 2013, to which Defendants filed a Reply on October 8, 2013. The Court found the matter suitable for disposition without oral argument and vacated the hearing set for October 21, 2013. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendants' Motion.

I.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Plaintiff makes the following allegations. Defendant Vital is a Florida corporation that produces and distributes nutritional supplements and performance beverages. (First Am. Class Action Compl. ("FAC") ¶¶ 8, 17, ECF No. 31.) Vital markets and sells high protein meal replacement bars ("Bars") as part of its "ZERO IMPACT" line of sports nutrition products. (FAC ¶ 2.) Defendant GNC is a global specialty retailer of health and wellness products that sells the Bars in its stores. (FAC ¶ 9.)

The Bars are marketed and sold in wrappers that feature the word "IMPACT" across the length of each bar. (Vital's Req. for Judicial Notice in Supp. of Mot. ("RJN"), Ex. A, ECF No. 33; Decl. of Marc L. Godino in Supp. of Opp'n ("Godino Decl."), ECF No. 36, Ex. 1, ECF No. 36-1.)[1] The

---

[1] Defendants request that the Court take judicial notice of various reproductions of the Bar's wrapper. (RJN, Exs. A-F.) Plaintiff disputes the size but not the content of these exhibits and does not deny that his claims are based on what is shown in these reproductions. (Opp'n 1, ECF No. 35.) The Court takes notice of these exhibits for the purposes of the Motion. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("If the documents are not physically attached to the complaint, they may be considered if

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-09374 SJO (JCx)</u>          **DATE:** <u>November 7, 2013</u>

word "ZERO" appears above the "I" and "M" of "IMPACT" in smaller text. (RJN, Ex. A; Godino Decl., Ex. 1.) Above the "T," there is a block of text that is similar in size to "ZERO" and reads "30g High Grade Protein." (RJN, Ex. A; Godino Decl., Ex. 1.) Beneath the word "IMPACT," in smaller text, is the phrase "High Protein Mealbar." (RJN, Ex. A; Godino Decl., Ex. 1.) Below that phrase is the flavor of each Bar. (RJN, Ex. A; Godino Decl., Ex. 1.) The back of the wrapper features nutritional facts, an ingredient list, and a marketing statement. (RJN, Ex. A; Godino Decl., Ex. 1.) The marketing statement declares that the low Dextrose Equivalent sugars contained in the Bars "have significantly less impact on blood sugar and glycemic index than most whole grain carbohydrates." (FAC ¶ 20; RJN, Ex. D.)

Plaintiff asserts that while Vital and GNC "brazenly market and advertise the [Bars] as 'ZERO IMPACT,' . . . the [Bars] certainly have an *impact* on consumers' carbohydrate, sugar and overall caloric intake, and to claim otherwise is simply false and misleading." (FAC ¶ 2 (emphasis in original).) Plaintiff also claims that the location and type size of the nutritional information and marketing statement "make it difficult to see and read." (FAC ¶ 19.) As a result, Plaintiff "repeatedly purchased" the Bars, including one purchase from GNC's store in Sherman Oaks, California on August 1, 2012. (FAC ¶¶ 23-24.)

On September 25, 2012, Plaintiff filed a Class Action Complaint in the Superior Court of California for Los Angeles County. Plaintiff alleged that Defendants falsely labeled the Bars in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (*See generally* Notice of Removal ("Notice"), Ex. A ("Compl."), ECF No. 1.) Plaintiff also pleaded causes of action for breach of contract and unjust enrichment. (*See generally* Compl.) Plaintiff filed the Complaint on behalf of himself and the class of consumers who were misled into purchasing the Bars. (Compl. ¶¶ 1-2.) On October 31, 2012, Vital removed the action to this Court, asserting federal subject matter jurisdiction in reliance on the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). (Notice ¶ 4.) The Court held that Vital did not adequately plead the jurisdictional requirements of CAFA and remanded the case to the Superior Court. (Order Remanding Case to L.A. Cnty. Super. Ct., ECF No. 13.) Defendants appealed to the Ninth Circuit, which reversed the jurisdictional holding and remanded the case. *See generally Watkins v. Vital Pharm., Inc.*, 720 F.3d 1179 (9th Cir. 2013).

On September 3, 2013, Plaintiff filed the FAC, alleging two causes of action: (1) false labeling, in violation of the UCL; and (2) false advertising, in violation of the CLRA. (FAC ¶¶ 26-43.) Defendants filed the instant Motion seeking to dismiss both causes of action and arguing that the

---

the documents' 'authenticity . . . is not contested' and 'the plaintiff's complaint necessarily relies' on them." (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:  CV 12-09374 SJO (JCx)**          **DATE:  November 7, 2013**

Court should defer the question of whether the "ZERO IMPACT" label is misleading to the Food and Drug Administration ("FDA") under the doctrine of "primary jurisdiction."[2]  (Mot. 13-20.)

II.    DISCUSSION

Primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993).  However, "[t]he doctrine does not require that all claims within the agency's purview be decided by the agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002).  "Nor is it intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Id.* (internal quotation marks omitted).  "Rather, it is a doctrine used by the courts to allocate initial decisionmaking responsibility between agencies and courts where such jurisdictional overlaps and potential for conflicts exist." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (internal quotation marks and brackets omitted).  The Ninth Circuit has developed the following test to determine when the invocation of primary jurisdiction is appropriate:

> There are four factors uniformly present in cases where the doctrine properly is invoked:  (1) the need to resolve an issue that (2) has been placed . . . within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration.

*United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987).  The doctrine is often most applicable where a claim "requires resolution of an issue of first impression[] or of a particularly complicated issue that Congress has committed to a regulatory agency." *Brown*, 277 F.3d at 1172.  Here, the relevant factors weigh in favor of dismissing Plaintiff's claims in deference to the FDA's primary jurisdiction.

    A.    Application of Factors

Defendants contend that the FDA has primary jurisdiction over "how a manufacturer may name and label its [food] products" and that the resolution of Plaintiff's UCL and CLRA claims would "invade the FDA's primary jurisdiction." (Mot. 14, 17.)  Congress has granted the FDA regulatory authority over false and misleading food labeling as part of the Food, Drug, and Cosmetic Act

---

[2]  Because dismissal is appropriate on primary jurisdiction grounds, the Court declines to address Defendants' alternate argument that Plaintiff fails to state a claim on which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot. 7-11.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-09374 SJO (JCx)</u>          **DATE:** <u>November 7, 2013</u>

("FDCA"). 21 U.S.C. § 343(a). The Ninth Circuit has recently offered district courts guidance on when it is appropriate to defer to the FDA's regulatory authority over the misleading labeling of food products. *See Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170 (9th Cir. 2012).

In *Pom Wonderful*, the plaintiff alleged that its competitor's juice product, labeled "Pomegranate Blueberry," misled consumers in violation of the Lanham Act, 15 U.S.C. § 1125(a), because actual pomegranate and blueberry juices combined to make up only 0.5% of the product. *Id.* at 1172-74. As relief, the plaintiff requested that the court require its competitor to place the phrase "Flavored Blend of 5 Juices" more prominently on the juice bottle's label. *Id.* at 1177. The panel held that the plaintiff's claim was barred because it conflicted with the FDA's authority to regulate food and beverage labels under the FDCA. *Id.* at 1177-78. In rejecting the plaintiff's claim, the panel explained that the FDA had issued several regulations regarding juice beverage labeling and that the defendant had complied with all the relevant regulations. *Id.* at 1177. Furthermore, the panel noted that the FDA had not taken any action against the defendant with respect to the "Pomegranate Blueberry" juice label, despite the FDA's ability to do so if it found the label misleading. The panel was careful to point out that the plaintiff's claim was barred by the FDCA, and so the panel did not decide whether the "label [was] non-deceptive." *Id.* at 1178. The panel declined to rule on the matter, even though the FDA had not addressed it, because it was within the compass of the FDA's authority to regulate food labels for misleading information, and such a ruling "would risk undercutting the FDA's expert judgments and authority." *Id.* at 1177.

Although the precise issue before the court in *Pom Wonderful* was whether the FDCA barred the plaintiff's Lanham Act claim, courts have interpreted the decision as "based on the idea of deference to the FDA" and "implicitly relying on the primary jurisdiction doctrine." *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1015 (N.D. Cal. 2012); *see also Monster Beverage Corp. v. Herrera*, No. CV 13-00786 VAP, 2013 WL 4573959, at *15 (C.D. Cal. Aug. 22, 2013) (citing *Astiana*); *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C 12-06355 JCS, 2013 WL 1632697, at *15-16 (N.D. Cal. Apr. 16, 2013) ("*Pom* [*Wonderful*] . . . teach[es] that where a claim is within the purview of the FDA's regulatory authority and the determination requires the expertise of the FDA, the court should not decide the question before the FDA has had an opportunity to address it.").[3] Following the Ninth Circuit's deference to the FDA in *Pom Wonderful*, courts have found it inappropriate to "decide an issue committed to the FDA's expertise without a clear indication of

---

[3] Plaintiff's reliance on *Won Kyung Hwang* is misplaced. (*See* Opp'n 14.) The court in *Won Kyung Hwang* found that primary jurisdiction "does not extend to state law consumer protection claims that are based on the allegation that statements made by the defendants are **factually incorrect**." 2013 WL 1632697, at *18 (emphasis added). Unlike the claims at issue in *Won Kyung Hwang*, *see id.* at *1, "ZERO IMPACT" is too ambiguous for the Court to determine whether it is factually correct. Resolving such ambiguity without FDA input could result in exactly the sort of "undercutting" of FDA judgments that the primary jurisdiction doctrine is designed to prevent. *Pom Wonderful*, 679 F.3d at 1177.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** <u>CV 12-09374 SJO (JCx)</u>          **DATE:** <u>November 7, 2013</u>

how the FDA would view the issue." *Hood v. Wholesoy & Co, Modesto Wholesoy Co.*, No. CV 12-05550 YGR, 2013 WL 3553979, at *5 (N.D. Cal. July 12, 2013) (citing cases). A recurring example of such a situation is "where the FDA has yet to speak on whether a particular label or claim on a consumer product is unlawful or misleading." *Ivie v. Kraft Foods Global, Inc.*, No. C 12-02554 RMW, 2013 WL 685372, at *6-7 (N.D. Cal. Feb. 25, 2013) (citing *Astiana*, 905 F. Supp. 2d at 1014-15). The primary jurisdiction doctrine is appropriate in this case because the FDA has yet to consider the nutritional import of the claim "ZERO IMPACT" or in what context the claim might mislead consumers about a product's nutritional content.

Plaintiff's UCL and CLRA claims center on his argument that the nature of the marketing claim "ZERO IMPACT," combined with its location on the wrapper and larger type size, creates the impression that the Bars have little or no dietary impact. (*See* FAC ¶¶ 18-21.)[4] Neither party has directed the Court to any FDA rule, regulation, or guidance document discussing how the claim "ZERO IMPACT" or the word "impact" can or should be used to describe a food product's nutritional content. Nor is there any evidence of the FDA bringing an enforcement action against Vital regarding the "ZERO IMPACT" claim or the nutrient content on its label. *See Pom Wonderful*, 679 F.3d at 1177-78. Without guidance about the context in which the FDA would find the claim "ZERO IMPACT" to be permissible, any determination on whether the term is misleading risks "undermining, through private litigation, the FDA's considered judgments." *Id.* at 1178.

The FDA has issued some regulations with regard to the word "zero," but these are designed to make sure that foods with claims like "zero calorie," "zero sodium," and "zero fat" contain the type and amount of nutrients that a reasonable consumer would expect. *See* 21 C.F.R. §§ 101.60-101.62. Without more, however, there is no reasoned way for the Court to determine whether the FDA regulations associated with labeling items as "zero calorie" and "zero fat" are, as Plaintiff suggests, meant to encompass a claim like "ZERO IMPACT." (*See* FAC ¶¶ 18-21, 30-31.) A term like "zero calorie" is not intuitively the same as "ZERO IMPACT." Calories, sugar, and fat are specific nutritional elements, but "impact" refers to the effect those elements have on the human body. The Court declines to apply the same regulatory framework the FDA has developed for "zero calorie" claims to the "ZERO IMPACT" claim in the absence of a more definitive statement of the FDA's position. *Cf. Astiana*, 905 F. Supp. 2d at 1016 (declining to apply interpretation of the word "natural" released in a policy statement on food labeling to the cosmetic labeling context).

---

[4] Plaintiff also appears to claim that the combined effect of "ZERO IMPACT" and the phrase "30g High Grade Protein" is misleading. (*See* FAC ¶ 19.) The Court would need to defer the question of whether these combined statements constitute an "implied nutrient content claim," as that term is defined in 21 C.F.R. § 101.13(b)(2)(ii), to the FDA as well. The FDA regulates implied nutrient content claims in a number of ways, including by circumscribing how large the type size of the claim may be in relation to that of the product's identification. *See* 21 C.F.R. §§ 101.13(f), 101.54-101.69, 105.3-105.66.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:**  CV 12-09374 SJO (JCx)          **DATE:**  November 7, 2013

"In the absence of any FDA rules or regulations (or even informal policy statements) regarding the use of the word ['impact'] on [food] labels, the court declines to make any independent determination on whether defendant's use of ['impact'] was false or misleading."  *Id.*  The Court "lack[s] the FDA's expertise in guarding against deception in the context of [food] labeling," *Pom Wonderful*, 679 F.3d at 1178, and so it defers this "issue of first impression" to the FDA for consideration, *Brown*, 277 F.3d at 1172.  Therefore, the Court **GRANTS** Defendants' Motion. Plaintiff may petition the FDA to take administrative action regarding the use of the "ZERO IMPACT" claim on Defendants' Bars.  *See* 21 C.F.R. § 10.25(a).

B.     Mode of Referral

Once invoked, the primary doctrine requires a court to suspend proceedings in order to "give parties [a] reasonable opportunity to seek an administrative ruling." *Reiter*, 507 U.S. at 268.  If a court determines that the doctrine of primary jurisdiction applies, it must either stay the case pending administrative ruling or dismiss the case without prejudice.  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1115 (9th Cir. 2008).  The decision to either stay or dismiss the case is within a court's discretion, but it must ensure that no party will be "unfairly disadvantaged" by dismissal. *Davel Commc'ns, Inc. v. Qwest Corp.*, 460 F.3d 1075, 1091 (9th Cir. 2006) (quoting *Reiter*, 507 U.S. at 268-69).   The primary factor in determining whether a plaintiff will be unfairly disadvantaged is whether his claims are likely to become time-barred as a result of dismissal.  *Id.*

Here, Plaintiff has a four-year statute of limitations on his UCL claim, Cal. Bus. & Prof. Code § 17208, and three years to bring his CLRA claim, Cal. Civ. Code § 1783.  For each claim the limitations period begins from the date that Plaintiff purchased the Bars as a result of Defendants' allegedly misleading wrapper.  *See Aryeh v. Canon Bus. Solutions, Inc.*, 292 P.3d 871, 879-82 (Cal. 2013) (discussing UCL limitations period); *Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 534 (N.D. Cal. 2012) (discussing CLRA limitations period).  Plaintiff alleges that he "repeatedly purchased" the Bars, but the only specific date provided is from a purchase Plaintiff made on August 1, 2012.  (FAC ¶ 23.)  Based on his FAC, then, Plaintiff has a little under three years to bring his UCL claim and a little under two to bring his CLRA claim.  Moreover, these figures are conservative as they do not factor in any time that might be tolled while the FDA reviews Plaintiff's administrative complaint, *see Prudential-LMI Commercial Ins. v. Sup. Ct.*, 798 P.2d 1230, 1240 (Cal. 1990) (discussing equitable tolling during administrative claim procedure), during the proceedings that occurred before this Court and the Ninth Circuit, *see Addison v. State*, 578 P.2d 941, 945 (Cal. 1978) (equitable tolling for time plaintiff's earlier filed case was pending in federal court), or because of California's "discovery rule," *see Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010).  Thus, the Court finds that dismissal without prejudice will not unfairly disadvantage Plaintiff by time-barring his claims and that this mode of deferral is appropriate given the fact that neither the Plaintiff nor the FDA has yet to initiate any action against Defendants' "ZERO IMPACT" labeling claim.

**JS-6**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

**CASE NO.:** __CV 12-09374 SJO (JCx)__     **DATE:** __November 7, 2013__

III.  __RULING__

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss.  The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Amended Class Action Complaint.  This action shall close.

IT IS SO ORDERED.